The opinion of the Court delivered April 16, 1864, was as follows per:
Conyngham, P. J.
The 25th Section of the Act of April 10, 1849, P. Laws 575,.. requires an additional license from venders of merchandise, &c.,. *551 for tlie manufacture or sale of nostrums, medical compounds or patent medicines, whether pills, powders, mixtures, or in any other form whatsoever.” Thus far the act is plain and free from misunderstanding; clearly there would be included under the general terms “medical compounds, &c.,” many ordinary medicines. The exception in the act raises the difficulty discoverable in the law. Who are then excepted ? Apothecaries are excepted for the sale of, or in selling of certaiu matters, which otherwise would have been covered by the broad terms used in the act. It is contended upon the part of the defendants that it is intended to exclude apothecaries entirely from the operation of the act; but if this had been the intention, why would it not have answered every purpose to have said simply regular apothecaries, and then stopped. An apothecary, says Webster in his dictionary, is “one who practices pharmacy, one who prepares drugs for medicinal purposes and keeps them for sale.” The meaning of the act, as it appears to me, is that apothecaries are excepted for sales of certain kinds of medical compounds, and that they can sell them without any new license under their general license as venders of merchandise. Now they can sell without any new license “simple medicines, the prescriptions of physicians, and the compounds of the books or treatise, describing the preparations of the several kinds of medicines in the United States; such is the definition of the terms Pharmacopoeia and Dispensatory used in the act; see Webster’s Dictionary ; but when they undertake to sell “nostrums,” defined in Webster to be “a medicine, the ingredients of which are kept secret for the purpose of restricting the profits of sales to the inventor or proprietor — a quack medicine,” medical compounds not of the ordinary and known character found in the books*or treatise before mentioned, and patent medicines, which explain themselves, then they must pay for an additional license. I can give no other construction to this act; if it had been intended to have excluded apothecaries entirely it was an idle waste of language to have used the words in the exception, following the name of the class. There was no more propriety in using these expressions than in the various acts relating to the licenses of other classes of citizens, to attach to the title of the taverukeeper, peddler, stock broker, real estate broker, &c., the different exercises and duties, such persons wore *552 in the habit of performing in pursuance of their calling. Does not every one of' ordinary intelligence know what an “apothecary” is ? "Will it be contended that the Legislature in their wisdom, intending to except them from liability, thought it necessary to add to their well-known shop title that the exception applied only to apothecaries engaged in the sale of simple medicines, attending to the prescriptions of physicians, and in compounding mixtures from books of practicó or instruction. I confess I am not able to discover any other class or kind of apothecary than those who devote themselves to just such duties. The term, too, is well known and understood in other acts ; see Act 31 March, 1860, Sect. 70 P. Law 401; Act March 31, 1856, Sect. 5 P. L. 200 ; in' these two cases no additional definition is used to explain who are intended by the word “apothecaries.”
My opinion is that the apothecary who undertakes to sell in the words of the law, “nostrums and patent medicines, is bound to take out an additional license under the Act of 1849, P. Laws 575, cited above.
The true meaning of the act can more readily be understood by putting the exception after the word “whatsoever” in the 6th line of the section as it is in Purdon ; neither do I see any use in the brackets enclosing the exception. It would then read: “All persons engaged in the manufacture or sale of any nostrums, medical compounds or patent medicines, whether pills, powders, mixtures, or in any form whatsoever, except regular apothecaries for the sale of simple medicines, the prescriptions of physicians and the compounds of the Pharmacopoeia shall also take out an additional license, &c., for manufacturing, vending, hawking, peddling, or in any way selling such nostrums, medical compounds and patent medicines.” I think this is carrying out the intent of the statute, and therefore I direct judgment to be entered for the plaintiff in the case.